# Guest Copy

For Your Files

CHARLES SMOLNIKAR
HOLLY SMOLNIKAR
NATHAN SMOLNIKAR
CYDNEY SMOLNIKAR

RESERVATION ID:     7504452
SHIP NAME:          LIBERTY OF THE SEAS
SAILING DATE:       26 JUL 2008
STATEROOM
CATEGORY:           L
DECK:               DECK TEN
NUMBER:             1255

CHARGES
STATEROOM:          4612.52
CRUISECARE:         Declined**
TOTAL:              4612.52 USD

** If you wish to purchase the travel cancellation/interruption and protection insurance please contact BerkleyCare at 1.800.453.4022 for eligibility and enrollment.

Cruise Ticket Contract
It is important that you read all terms of the cruise ticket contract. This is not transferable and is not subject to alterations by the guest. Name changes on the day of boarding are not permitted.



EXHIBIT
"C"



# Cruise/CruiseTour Ticket Contract

Important - Passenger Cruise/CruiseTour Ticket Contract 1
Read All Clauses
Whether or not signed by Passenger, this ticket shall be deemed to be an undertaking and acknowledgement by Passenger that he accepts on behalf of himself and all other persons traveling under this ticket, all the terms and conditions set out herein.
1. (a) "Passenger" includes all persons traveling under this ticket and their heirs and representatives. "Passenger" shall include the plural and the use of the masculine shall include the feminine.
(b) "Carrier" means the cruise line operator named in Article 20 of this Cruise Ticket Contract, all Vessels, Royal Celebrity Tours Inc. ("RCT") with respect to the RCT Land Tour portion of any CruiseTour, and their respective employees, agents, affiliates, successors and assigns.
(c) "Vessel" means the ship chartered by Carrier on which Passenger may be traveling or against which Passenger may assert a claim.
(d) "CruiseTour" shall mean the combined vacation package consisting of the cruise described in this booklet and the RCT Land Tour.
(e) "RCT Land Tour" shall mean the land tour component of a CruiseTour to be provided either prior to the initial embarkation on the cruise or after the final debarkation from the cruise, as indicated in this booklet.
(f) "Transport" means the railcars, buses and other modes of transportation or accommodation provided by RCT in connection with a RCT Land Tour.
2. (a) Each adult Passenger is permitted to carry up to two hundred pounds (200 lbs.) of luggage aboard the Vessel. In no event shall any Passenger bring on board the Vessel, or in connection with the RCT Land Tour, any controlled substances, live animals, weapons, firearms, explosives or other similar property without written permission from Carrier. Carrier reserves the right to refuse to permit any Passenger to take on board the Vessel or on any mode of Transport any item Carrier deems inappropriate.
(b) Unless negligent, Carrier is neither responsible nor liable for any loss of or damage to Passenger's property. Liability for loss of or damage to Passenger's property in connection with any air or ground transportation shall be the sole responsibility of the provider of the service and in accordance with applicable limitations.
(c) Carrier's liability for loss or damage to property is limited to $300.00 per Passenger unless Passenger declares the true value in writing and pays Carrier before embarkation or before arriving for the start of the RCT Land Tour (whichever is earlier) a fee of five percent (5%) of the amount that such value exceeds $300.00. In such event, Carrier's liability shall be limited to its true declared value, but not exceeding $5,000.
(d) In no event shall Carrier be liable for loss of or damage to jewelry, cash, negotiable paper, photographic/electronic equipment or other valuables unless they are deposited with Carrier on the Vessel for safekeeping against receipt (RCT may not accept valuables for deposit). Carrier's liability for loss of or damage to valuables so deposited shall not exceed the amounts indicated in Clause 2(c).
3. No undertaking or warranty shall be given or shall be implied as to the seaworthiness, fitness or condition of the Vessel or any food or drink supplied on board.
4. Any medical personnel, masseuse, hair stylist, manicurist or other service providers on board the Vessel or on Transport are provided solely for the convenience of Passenger. Such persons are independent contractors and not acting as agents or representatives of Carrier. Carrier assumes no liability whatsoever for any treatment, diagnosis, advice, examination or other services provided by such persons. Passenger shall pay for all medical care requested or required, whether aboard or ashore, including the cost of any emergency medical care or transportation incurred by Carrier.
5. All arrangements made for or by Passenger for air transportation, shore excursions, ground tours, ground transportation, hotels, restaurants and other similar activities or services are made solely for Passenger's convenience and are at Passenger's risk. The providers of such services are independent contractors and are not acting as agents or representatives of Carrier. In no event shall Carrier be liable for any accident or harm to Passenger which occurs off the Vessel or the Transport as a result of any acts, omissions or negligence of any independent contractors.
6. Carrier may for any reason, at any time and without prior notice, cancel, advance, postpone or deviate from any scheduled sailing or port of call, or substitute another vessel or port of call, and shall not be liable for any loss whatsoever to Passenger by reason of such cancellation, advancement, postponement, substitution or deviation. In connection with a CruiseTour, Carrier may for any reason, at any time and without prior notice, cancel, advance, postpone or deviate from any scheduled departure or destination, or substitute another railcar or bus or destination or lodging or other component of the CruiseTour, and shall not be liable for any loss whatsoever to Passenger by reason of such cancellation, advancement, postponement, substitution or deviation. By way of example, and not limitation, Carrier may deviate from any scheduled sailing and may otherwise land Passenger and his property at any port if Carrier believes that the voyage or any Passenger or property may be adversely affected as a result of hostilities, blockades, prevailing weather conditions, labor conflicts, strikes onboard or ashore, breakdown of Vessel, congestion, docking difficulties or any other cause whatsoever. Similarly, by way of example, and not limitation, Carrier may at its discretion elect not to visit a location shown on your itinerary. Carrier reserves the right to substitute a hotel for the planned hotel, provided that Carrier shall make commercially reasonable efforts to provide a comparable hotel.
7. Carrier shall have the right to comply with any orders, recommendations, or directions whatsoever given by any governmental entity or by persons purporting to act with such authority and such compliance shall not be deemed a breach of this Contract.
8. Refunds for Passenger cancellations prior to sailing or the first day of the CruiseTour (whichever occurs first) are limited by the terms of Carrier's refund policy. Passengers are advised to consult the Carrier's cruise brochure for the terms of Carrier's refund policy.
9. All Passports, visas and other travel documents required for embarkation and disembarkation and at all ports of call are the responsibility of Passenger.
10. Passenger, or if a minor, his parent or guardian, shall be liable to, and shall reimburse Carrier for, any damage to the Vessel, the Transport or any property of Carrier caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of the Passenger; and Passenger, or if a minor, his parent or guardian, shall further indemnify Carrier, the Vessel and the Transport and each and all of their agents and servants against all liability which Carrier, the Vessel or the Transport or such agents or servants may incur towards any person or company or government for any personal injury, death or damage to property caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of Passenger.
11. IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE A COURT LOCATED IN MIAMI, FLORIDA, U.S.A., TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN ANY COURT LOCATED IN MIAMI.




FLORIDA.

12. (A) NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER, THE VESSEL OR THE TRANSPORT UPON ANY CLAIM RELATING TO LOSS OF OR DAMAGE TO PROPERTY UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN TEN (10) DAYS AFTER TERMINATION OF THE VOYAGE OR THE CRUISE TOUR (WHICHEVER IS LATER) WHICH THIS CONTRACT RELATES; AND IN NO EVENT SHALL ANY SUCH SUIT FOR ANY CAUSE AGAINST CARRIER, THE VESSEL OR THE TRANSPORT RELATING TO LOSS OF OR DAMAGE TO PROPERTY BE MAINTAINABLE UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN SIX (6) MONTHS AFTER THE TERMINATION OF THE VOYAGE OR THE CRUISETOUR (WHICHEVER IS LATER) AND PROCESS SERVED WITHIN THIRTY (30) DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.

(B) NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER, THE VESSEL OR THE TRANSPORT FOR ANY CLAIM, INCLUDING BUT NOT LIMITED TO, DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH OF PASSENGER UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN SIX (6) MONTHS FROM THE DAY CAUSE OF ACTION OCCURRED; AND IN NO EVENT SHALL ANY SUCH SUIT FOR ANY CAUSE AGAINST CARRIER, THE VESSEL OR THE TRANSPORT BE MAINTAINABLE UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DAY WHEN THE CAUSE OF ACTION OCCURRED AND PROCESS SERVED WITHIN THIRTY (30) DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.

(C) THE CARRIER HEREBY DISCLAIMS ALL LIABILITY TO THE PASSENGER FOR DAMAGES FOR EMOTIONAL DISTRESS, MENTAL SUFFERING OR PSYCHOLOGICAL INJURY OF ANY KIND UNDER ANY CIRCUMSTANCES, EXCEPT TO THE EXTENT SUCH DISCLAIMER IS PROHIBITED BY 46 U.S.C. 1183C. (B). WITHOUT LIMITING THE PRECEDING SENTENCE, IN NO EVENT WILL CARRIER BE LIABLE TO PASSENGER FOR ANY CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES.

(D) THE EXCLUSIONS OR LIMITATIONS OF LIABILITY OF CARRIER SET FORTH IN THE PROVISIONS OF THIS CONTRACT SHALL ALSO APPLY TO AND BE FOR THE BENEFIT OF AGENTS, INDEPENDENT CONTRACTORS, CONCESSIONAIRES AND SUPPLIERS OF CARRIER, AS WELL AS OWNERS AND OPERATORS OF ALL SHORESIDE PROPERTIES AT WHICH THE VESSEL OR THE TRANSPORT MAY CALL, AS WELL AS OWNERS, DESIGNERS, INSTALLERS, SUPPLIERS AND MANUFACTURERS OF THE VESSEL OR THE TRANSPORT, OR ANY COMPONENT PARTS OF EITHER, TOGETHER WITH THE EMPLOYEES AND SERVANTS OF EACH OF THE FOREGOING.

13. Passenger, or if a minor, his parent or guardian, shall be liable to Carrier, the Vessel and the Transport for any fines or penalties imposed on the Vessel, the Transport or Carrier by any authorities for his failure to observe or comply with local governmental laws or regulations, including requirements relating to immigration, customs or excise.

14. Passenger warrants that he and those traveling with him are fit for travel and that such travel will not endanger themselves or others. Carrier reserves the right to terminate a Passenger's cruise or RCT Land Tour or both at any time, at the risk and expense of the Passenger disembarked, when in the opinion of Carrier, Passenger is believed to be a danger to himself or a disturbance or danger to others.

15. Carrier shall not be required to refund any portion of the fare paid by any Passenger who fails for any reason to be onboard the Vessel or the Transport at the time of the Vessel's or the Transport's departure from the port of embarkation or any port of call or destination or point of departure as the case may be and shall not be responsible for lodging, meals, transportation or other expenses incurred by Passenger as a result thereof. Carrier shall have no obligation to any Passenger to deviate from any scheduled sailing or port of call or destination

16. Carrier has the exclusive right to include photographic, video and other visual portrayals of Passenger in any pictorial medium of any nature whatsoever for the purpose of trade, advertising, sales, publicity or otherwise, without compensation to Passenger, and all rights, title and interest therein (including all worldwide copyrights therein) shall be Carrier's sole property, free from any claims by Passenger or any person deriving any rights or interest from Passenger.

17. Passenger acknowledges and confirms that any travel agent utilized by Passenger in connection with the issuance of this ticket is, for all purposes, Passenger's agent and Carrier shall not be liable for any representation made by said travel agent. Passenger shall at all times remain liable to Carrier for the price of passage.

18. In addition to the restrictions and exemptions from liability provided in this Contract, Carrier shall have the full benefit of any applicable laws providing for limitation and exoneration from liability, and nothing in this Contract is intended to operate to limit or deprive Carrier of any such statutory limitation of or exoneration from liability. Without limiting the foregoing, Carrier claims benefit of all restrictions, exemptions and limitations of the "Convention Relating to the Carriage of Passengers and Their Luggage by Sea" of 1974 as well as the Protocol to the "Convention Relating to the Carriage of Passengers and Their Luggage by Sea" of 1976 ("Athens Convention"), which limits the liability of the Carrier for the death of or personal injury to a passenger to no more than the applicable amount of Special Drawing Rights as defined therein, and all other limits on damage or loss to personal property.

19. This Contract contains the entire agreement between Carrier and Passenger and supersedes any other agreements, written or oral, relating to the subject matter. Any waiver of any provision of this Contract must be made in writing and signed by Carrier. If any portion of this Contract shall be determined to be invalid, then said portion shall be deemed severed from the Contract in such jurisdiction only and all remaining portions shall remain in full force and effect.

20. Carrier: Royal Caribbean Cruises Ltd., 1050 Caribbean Way, Miami, Florida, and 33132, USA

21. Carrier reserves the right to impose a supplemental charge relating to unanticipated occurrences including, but not limited to, increases in the price of fuel. Any such supplement charges shall apply to both existing and new bookings (regardless of whether such bookings have been paid in full).


