UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 08-23549-CIV-JORDAN

HOLLY SMOLNIKAR )
          Plaintiff )
 )
vs. )
 )
ROYAL CARIBBEAN CRUISES LTD., )
 )
          Defendant )
_____ )

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Following oral argument and a review of the record, and for the reasons stated below, Royal Caribbean Cruises' motion for summary judgment [D.E. 103] is GRANTED.

## I. BACKGROUND AND FACTS

This action arises from injuries sustained by Ms. Smolnikar in July of 2008 while participating on an offshore "zip line" excursion tour in Montego Bay, Jamaica, during a cruise aboard the *Liberty of the Seas*, a Royal Caribbean Cruises passenger vessel. The excursion was owned and operated by Chukka Caribbean Adventures Ltd., which, on its website, states that the zip line tour involves "soaring through the trees using an intricate system of harnesses, pulleys and carabiners on horizontal traverses." In essence, a person "zips" between trees that are high above ground and sometimes several hundred feet apart from one another, departing from and landing on platforms built on the trees.

Ms. Smolnikar alleges that during the tour she collided at a high speed with a tree and suffered a herniated disk in her neck (which required an immediate cervical fusion), as well as other minor injuries to her legs and arm. She has brought claims against Royal Caribbean for (1) negligent selection and/ or retention of Chukka as a zip line tour operator, and (2) failure to warn of dangerous conditions present in the zip line tour. Additionally, though she did not plead this theory, Ms. Smolnikar asserts that Royal Caribbean is vicariously liable for the accident because Chukka was acting as its apparent agent.

### A. THE CRUISE, THE DISCLAIMERS, AND THE ACCIDENT

On multiple occasions before and during the cruise, Royal Caribbean provided Ms.

Smolnikar with written disclaimers expressly indicating that the offshore excursion tours offered during the cruise were operated by independent contractors and that Royal Caribbean would not be liable for any injuries stemming from these excursions.  Ms. Smolnikar was given the first such notice several months prior to the cruise, when she received a booklet from Royal Caribbean called "Adventure Awaits."  This booklet, among other things, provided descriptions of the different excursion tours offered on the cruise, and stated that the shore excursions "are offered for sale by Royal Caribbean . . . as a convenience to [its] guests," that the "tour services are provided by independent tour operators," and that "Royal Caribbean . . . will not be responsible or liable for any loss, damage, injury, costs or delays resulting from, or in connection with, [the passenger's] use of [the excursion tour] services."

Ms. Smolnikar's passenger ticket contract also included a similar disclaimer:

> All arrangements made for or by the [p]assenger for . . . shore excursions . . . are made solely for [the] [p]assenger's convenience and are at the [p]assenger's risk.  The providers of such services are independent contractors and are not acting as agents or representatives of carrier.  In no event shall carrier by liable for any accident or harm to [p]assenger which occurs off the [v]essel or as a result of any acts, omissions or negligence of any independent contractors.

Ms. Smolnikar recalls reading this specific clause of her cruise ticket contract prior to the cruise, and she signed a "charge account and cruise ticket," which said that "it is important that [passengers] read all terms of the cruise ticket contract."

While aboard the cruise, Ms. Smolnikar viewed a video advertising the Chukka zip line tour at Montego Bay on the television in her shipboard cabin, and recalls thinking that the prospect of "flying through the air and being suspended . . . looked pretty exciting."  Ms. Smolnikar and her family decided to purchase tickets for the zip line tour, and visited the shore excursion desk onboard the cruise ship.  Ms. Smolnikar testified that she and her family asked the Royal Caribbean representative at the shore excursion desk several questions regarding the tour (e.g., how safe it was, what to expect, if there was an age limit for her son, whether it was recommended, and whether the tour was operated by Royal Caribbean).  According to Ms. Smolnikar, the representative – whom she has not identified – recommended the tour and indicated it was safe because Royal Caribbean "was in charge of it."  Following this conversation, Ms. Smolnikar and her family purchased tickets for the excursion.  The tickets indicated on the front cover that the excursion was operated by

2

Chukka, and on the back side provided the following disclaimer:

> The arrangement set forth on this ticket for . . . excursions . . . are made solely for the convenience of the ticket holder and are at the ticker holder's risk. . . .The providers of such services are independent contractors and are not acting as agents or representatives of Royal Caribbean . . . . In no event shall [Royal Caribbean] be liable for any accident or harm to ticket holders, which occurs as a result of any acts, omissions or negligence of any independent contractors.

Ms. Smolnikar recalls reading this disclaimer on the back of her excursion ticket.[1]

During the excursion, and while receiving safety instructions prior to actually participating in the zip line portion of the tour, Ms. Smolnikar read and signed another disclaimer form provided by Chukka.  The disclaimer, in relevant part, provided:

> I hereby indemnify and hold harmless . . . Royal Caribbean . . .against any liability for personal loss [or] injury (whether or not resulting in death) . . . whether or not arising from negligence or default of Chukka Blue Adventure Tours while on the Chukka Canopy Tour from the starting point to the final stop while engaging in doing the Canopy Tour which I understand can be a dangerous activity and I further declare that I have signed this indemnity freely and voluntarily before incurring any obligations to embark upon the Canopy Tour.

The disclaimer also noted that the tour "is not recommended for persons . . .with . . .back, neck or shoulder problems."[2]

------

[1]  In addition to the various disclaimers mentioned here, Royal Caribbean's representatives have testified without contradiction that Chukka's Montego Bay zip line tour was not owned, operated, leased, managed, maintained, or controlled by Royal Caribbean; that Royal Caribbean is not involved in a joint venture or agency relationship with Chukka; that Chukka's relationship with Royal Caribbean was that of an independent contractor; that Royal Caribbean did not have the authority to employ, hire, fire, or control any of Chukka's agents or employees; that Royal Caribbean did not provide Chukka with any training as to how to operate or manage the tour, or supply them with materials for use in its operations; and that Royal Caribbean did not share profits or losses with Chukka in any way.

[2]  Ms. Smolnikar testified during her deposition that earlier in 2008 – prior to the cruise – she had visited a doctor because she was experiencing significant neck, back, and arm pain, which she described as "horrible" at one point.  She says, however, that the pain was gradual and did not result from a traumatic event, and that by the time she went on the cruise it had substantially subsided (from a level 8 out of 10 to a level 2).  Ms. Smolnikar has also submitted deposition testimony from her treating physician and chiropractor disputing the severity of her neck, shoulder, and arm pain – and any physical restrictions arising therefrom – before the cruise.  Whether or not Ms. Smolnikar had a pre-existing medical condition prior to the accident is not relevant for purposes of the pending

Ms. Smolnikar's accident took place on traverse #6 of the zip line tour.  She testified at her deposition that the tour guides indicated that this particular traverse was approximately 1,000 feet across (from platform to platform) and that participants could reach up to 60 miles per hour. Describing her accident, Ms. Smolnikar says she "ran straight into the tree with no stopping, no slowing down, no nothing, full force slamming into [a] tree."  The tree that she slammed into did have padding, but Ms. Smolnikar says it resembled a bed mattress strapped to the tree.[3]

Following the accident, Ms. Smolnikar did not inform her tour guide or anyone at Chukka that she had been injured or that she had been involved in an accident.  She also did not report the accident to anyone at Royal Caribbean upon re-boarding the ship, and did not seek medical attention aboard the cruise ship until two days following the incident.  A Royal Caribbean shipboard medical record reflects the visit to the medical unit, where Ms. Smolnikar was provided morphine for her injuries.

Ms. Smolnikar's expert, Mr. Kempfe, has submitted a report opining that there were multiple unsafe conditions or dangers present at traverse #6.  These included an unreasonably sharp degree of slope leading to an excessive rate of speed, the absence of a secondary or alternate brake system (in light of the high rate of speed at this traverse), and inadequate padding or protection at the landing platform.

### B. ROYAL CARIBBEAN'S SELECTION AND RETENTION OF CHUKKA'S MONTEGO BAY ZIP LINE TOUR

Excursion tour operators that wish to have Royal Caribbean promote and sell their tours to cruise passengers are subject to a "request for approval" process.  As indicated in the operations manual for tour operators, the review process for proposed tours "incorporates all relevant details,

---

summary judgment motion.

[3] In her response memorandum, Ms. Smolnikar says that she testified at her deposition that a portion of her body missed the safety padding on the tree during the accident.  But having reviewed the deposition testimony cited to in support of this "disputed fact," I did not find any testimony where Ms. Smolnikar indicated that she struck an un-padded portion of the tree.  Nevertheless, Timothy Kempfe, Ms. Smolnikar's expert, opines that Ms. Smolnikar rotated sideways while on traverse #6, and that as a result, she struck an un-padded protruding limb of the tree when she landed at the platform.

4

such as [the] quality and content of tours being proposed, price, past service history, historical participation levels, [and] insurance levels."[4]

Royal Caribbean decided to offer Chukka's Montego Bay zip line tour (the subject excursion) to its cruise passengers in November of 2004.  According to its representatives, Royal Caribbean found this excursion suitable to promote and sell to its passengers for several reasons.  First, Royal Caribbean had previously been promoting and selling several of Chukka's other "soft adventure" tours (e.g., horseback riding, buggy tours, kayak tours, etc.) since 1999-2000 without any reported accidents or incidents.  Throughout its relationship with Royal Caribbean, Chukka had a "very good track record of safety."  Second, the feedback and comments that Royal Caribbean received from passengers who participated on Chukka's excursions "was always positive."  Third, Royal Caribbean was not aware of any reported accidents or injuries occurring on any of Chukka's tours before it decided to offer the Montego Bay zip line excursion.  Fourth, Royal Caribbean learned that Chukka had employed Darren Hreniuk, who designed the Original Canopy Tour in Costa Rica, to design and assist in constructing the Montego Bay zip line tour.  The Original Canopy Tour, according to Royal Caribbean, is the pioneer of the zip line excursion industry and has been operating a successful, incident-free tour since 1997.  Fifth, Chukka had the reputation of a first-class excursion tour operator.  Patrick Schneider, Royal Caribbean's shore excursion account manager in 2004, testified at his deposition that Chukka's reputation in the industry was "that they were very thorough, very detailed oriented and inventive," and that "[t]hey came up with new ideas, new types of tours, and [provided guests] . . . a very positive experience."  Sixth, albeit for a limited period of time, Chukka had operated zip line excursions without any problems before Royal Caribbean began offering the Montego Bay tour.  Chukka opened the zip line tour in Montego Bay in December of 2003, and another one in Ocho Rios, Jamaica, in February of 2004 – and there was no indication that it had encountered any problems or experienced any accidents at either location before November of 2004. Seventh, during its approval process, Royal Caribbean learned that other well-known passenger

---

[4]  A Royal Caribbean representative testified that the insurance requirement serves to limit the pool of prospective excursion tour operators to only "major players" which can afford the hefty premium obligations for an insurance policy providing $2 million in coverage, which is ostensibly the amount required by Royal Caribbean.

cruise companies (Carnival and Princess) had been offering Chukka's Montego Bay tour for approximately a year.

The record also shows that, during the approval process, Royal Caribbean requested (via email) that Chukka send it operating plans and a description of the tour, and that it also wanted to send representatives to participate in the tour before beginning to promote and sell it.  Paul Loughren, Royal Caribbean's current shore excursion account manager, says that his email communications appear to confirm that Royal Caribbean representatives from different ships did actually participate in the excursion tour before Royal Caribbean began offering it.

Once Royal Caribbean began offering Chukka's Montego Bay zip line tour to its passengers, it received guest feedback regarding the tour through "comment forms" provided to passengers at each cruise ship's shore excursion desk and guest satisfaction surveys provided to passengers at the end of the voyage, which were reviewed by an independent department.  The manual for tour operators indicates that if Royal Caribbean "see[s] consistent complaints on a tour, with no action or results in rectifying the situation," it will suspend or cancel the tour.  Ms. Smolnikar has not produced any comment forms or surveys showing that any of Royal Caribbean's passengers believed that the zip line tour was unsafe or, more specifically, that traverse #6 was dangerous or problematic in any way.

Royal Caribbean also required Chukka to submit reports for any accidents occurring on the tour.  The tour operator's manual contained the following language:

> The ship (Explorations!/Shore Excursion/Dive Manager, and/ or Doctor, M&R Manager/Onboard Marketing Manager, Hotel Director) must be informed of any and all accidents/incidents involving a guest, immediately or at the conclusion of the tour. The agent should clearly indicate what action was taken and what gesture, if any, has been made. . . . A full report should be submitted to the ship and Miami office in a timely fashion.

Additionally, if an employee of Royal Caribbean witnessed an accident or injury occurring during an offshore excursion, he or she could create a record of the accident if it was reported by the passenger.  On the other hand, Royal Caribbean's employees were instructed not create accident reports for passengers injured on offshore excursions or tours if they did not personally witness the incident and the information submitted would be based on third-party accounts or speculation. In such a circumstance, the passenger was instructed that the accident could only be reported to the tour

operator, which is then solely responsible for completing an accident report.  In turn, as noted above, tour operators were required to submit accident reports to Royal Caribbean.  Notably, the record here is devoid of any accident reports – submitted by Chukka to Royal Caribbean, or created by Royal Caribbean itself – regarding any Royal Caribbean passengers who participated in Chukka's Montego Bay zip line tour.

Royal Caribbean has also submitted evidence – mostly in the form of testimony – showing that Chukka conducted regular safety inspections of the zip line operation.  Mr. Hreniuk, who is also Royal Caribbean's expert, testified at his deposition that at least two inspections were performed on Chukka's Montego Bay tour before Royal Caribbean began offering the tour; that the tour was inspected on a semi-annual basis by outside professionals, and inspected on a daily and weekly basis by Chukka's local technicians; and that the tour was inspected by outside professionals on at least seven occasions  from the time that Royal Caribbean began selling the excursion to the date of Ms. Smolnikar's alleged accident.  The only documentation of these inspections are two inspection reports produced by Royal Caribbean, which were received from Chukka – one from December of 2003 and the other from February of 2008.  The 2003 report does not indicate that the tour had any serious safety issues, and does not provide any commentary regarding traverse #6.  And the 2008 report, which was conducted by High Adventure Technology, also does not reference any serious safety concerns, nor does it make note of any of the dangers or problems Mr. Kempfe opines existed at traverse #6.[5]  Royal Caribbean concedes that it did not conduct any of its own inspections of the Montego Bay zip line tour.[6]

## II. Legal Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[5]  It is unclear whether Royal Caribbean was in possession of these inspection reports before Ms. Smolnikar's accident.

[6]  Ms. Smolnikar originally named Chukka as a defendant in her complaint, but she did not pursue her claims against Chukka and dismissed them without prejudice [D.E. 47, 49].  Further, it does not appear that Ms. Smolnikar obtained any discovery from Chukka, or that she deposed any of Chukka's representatives or employees.

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.*, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). It must also "resolve all reasonable doubts about the facts in favor of the nonmovant." *See United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

### III. ANALYSIS

#### A. APPLICABLE LAW

Federal maritime law applies to actions arising from alleged torts "committed aboard a ship sailing in navigable waters." *See Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1321 (11th Cir.1989). This principle extends to torts occurring at offshore locations or ports-of-call during the course of a cruise. *See Doe v. Celebrity Cruises, Inc.* 394 F.3d 891, 901 (11th Cir. 2004). *See also Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D.Fla. 2006) (applying federal maritime law in negligence action against cruise line company stemming from accident occurring during an offshore excursion). The parties do not dispute that maritime law governs.

General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *See East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864-65 (1986). *See also Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1530 (11th Cir. 1990). In the absence of well-developed maritime law pertaining to Ms. Smolnikar's negligence claims, I will incorporate general common law principles and Florida state law to the extent they do not conflict with federal maritime law. *See Just v. Chambers,* 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will

8

recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation."). *See also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2nd Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular"); *Wells v. Liddy,* 186 F.3d 505, 525 (4th Cir. 1999) (in the absence of a well-defined body of maritime law relating to a particular claim, the general maritime law may be supplemented by either state law or general common law principles).

### B. DISCLAIMERS

Royal Caribbean argues that the disclaimer provisions in the excursion tour booklet, the passenger cruise ticket contract, the excursion ticket, and the Chukka disclaimer form are binding disclaimers that absolve it from any liability for any alleged injury sustained by Ms. Smolnikar during the Chukka zip line tour.  In opposition, Ms. Smolnikar responds that, pursuant to 46 U.S.C. § 30509 (formerly codified as 46 U.S.C. § 183c), Royal Caribbean is a "common carrier" which is prohibited from contractually limiting its liability for its own negligence.  I agree with Ms. Smolnikar.

In relevant part, § 30509(a)(1)(A) states:

> The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting . . .the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents.

A provision in a passenger contract or disclaimer form attempting to limit a carrier's liability as described above is deemed void.  *See* § 30509(a)(2).  This statutory prohibition applies to passenger cruise ship companies attempting to disclaim or limit their liability for injuries to passengers based upon their own negligence.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335-36 (11th Cir. 1984) (former "§183c expressly invalidates any contract provision purporting to limit a ship's liability for negligence to its passengers"); *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1355 (S.D.Fla. 2009) ("It is well settled that the owner of a passenger vessel may not contractually limit its own liability for its own negligence.") (citing *Kornberg*); *Carlisle v. Ulysses Line Ltd.*, 475 So.2d 248, 249 (Fla. 3d DCA 1985) (case involving cruise ship passengers: " . . .[A]ny attempt by the defendants to exculpate themselves from liability for injuries arising from their

9

own negligence or that of their employees would be unlawful.") (citing former § 183c).

Though this action stems from injuries allegedly sustained during an off-shore excursion tour owned and operated by Chukka, an independent third-party company, Ms. Smolnikar contends that Royal Caribbean itself was negligent in failing to warn of dangerous conditions on the zip line tour and that it negligently selected and/or retained Chukka as an independent contractor. She is, in short, asserting that Royal Caribbean itself was negligent. *See, e.g., Becker v. Poling Transp. Corp*., 356 F.3d 381, 389 (2nd Cir. 2004) (a cause of action for negligent selection of an independent contractor "is a form of direct liability"); *Island City Flying Serv. v. Gen. Elec. Credit Corp.,* 585 So.2d 274, 276 (Fla.1991) (a claim for negligent hiring or retention is independent of the doctrine of respondeat superior). These claims asserting direct negligence on the part of Royal Caribbean, undisputably a common carrier, fall within the parameters of § 30509's prohibitions against disclaimers because the statute's language is broad and unqualified: it prohibits common carriers from limiting their liability for "personal injury or death caused by negligence or fault of the owner [of the passenger vessel] or the owner's employees or agents." *See* § 30509(a)(1)(A). There is no exception in the statute for claims based on events or omissions occurring in the midst of a voyage but at an offshore location or in the course of an offshore excursion. I therefore apply § 30509(a)(1)(A) pursuant to its plain language, which expressly forbids Royal Caribbean from limiting or disclaiming liability stemming from a passenger's allegations of direct negligence against it (regardless of whether the incident occurred offshore). *See Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). *See also Fojtasek,* 613 F.Supp.2d at 1355 (denying motion to dismiss negligence claims against a cruise ship for its own negligence in selecting a shore excursion operator and in failing to warn the plaintiff of dangers in the shore excursion because "[i]t is well settled that the owner of a passenger vessel may not contractually limit its own liability for its own negligence") (internal citation omitted); *Carlisle,* 475 So.2d at 249 (concluding that former § 183c would void any disclaimer regarding negligence claims against a cruise ship liner based on a failure to a warn passengers of dangerous conditions at an off-shore location).

Although Royal Caribbean argues that § 30509(a)(1)(A) does not apply in this circumstance, it fails to provide any authorities supporting its proposed limitation to the statute's breadth. Instead,

Royal Caribbean cites to cases that do not address that proposition and, thus, are inapplicable here. *See, e.g., Henderson v. Carnival Corp.*, 125 F.Supp.2d 1375, 1377 (S.D.Fla. 2000) (upholding the applicability of a disclaimer on excursion tour ticket where the plaintiff sought to hold Carnival, the cruise ship operator, *vicariously* liable for the negligence of an independent catamaran excursion tour operator, without any discussion of § 30509(a)(1)(A)); *Corby v. Kloster Cruise Limited*, No. C-89-4548 (ARB), 1990 WL 488464, at *3 (N.D.Cal. Oct. 5,1990) (upholding validity of disclaimer for liability based on offshore incident under California law, but without reference to maritime law or former § 183c); *Lohman v. Royal Viking Lines*, 1981 A.M.C. 1104, 1109 (D.Col. 1980) (upholding the validity of a cruise ship line's disclaimer where claims brought against line were based on *vicarious* liability for the negligence of an independent excursion tour operator).

Royal Caribbean also argues that § 30509(a)(1)(A) does not apply to Chukka's particular disclaimer form – purportedly absolving Royal Caribbean of any liability – because Chukka is not subject to the prohibitions of the statute, which applies to passenger vessels.  But there are no cases supporting the proposition that a passenger vessel owner can circumvent §30509(a)(1)(A)'s broad prohibition by having its passengers execute a disclaimer form provided by a separate offshore entity, which absolves both the third-party entity and the passenger vessel owner.  Such an argument also runs counter to the Third District's ruling in *Carlisle,* which concluded that former §183c applied to a negligence action against a cruise line based on an offshore incident because passenger vessels have a duty to their passengers "beyond the port."  *See* 475 So.2d at 251.  Furthermore, the two cases cited by Royal Caribbean in support of this argument concern an entirely different circumstance: waiver forms signed by cruise passengers who rented wave runners owned by the cruise line during off-shore excursions.  *See In re Complaint of Royal Caribbean Cruises, Ltd.*, 403 F.Supp.2d 1168, 1170-71 (S.D.Fla. 2005); *In re Complaint of Royal Caribbean Cruises, Ltd.*, 459 F.Supp.2d 1275, 1278-79 (S.D.Fla. 2006).  In both of these cases, the negligence claims were brought against Royal Caribbean as the owner of the wave runner, and not in its capacity as the owner of a passenger cruise ship subject to § 30509(a)(1)(A).  For that reason, neither decision discussed, or even mentioned, the applicability of § 30509(a)(1)(A).

Accordingly, I conclude that, insofar as they attempt to limit Royal Caribbean's liability for its own alleged direct negligence relating to the injuries sustained by Ms. Smolnikar during Chukka's

Montego Bay zip line tour, the disclaimer provisions found within the excursion tour booklet, the passenger cruise ticket contract, the excursion ticket, and the Chukka disclaimer form are void under §30509(a)(1)(A) and § 30509(a)(2).

### C. NEGLIGENT SELECTION AND RETENTION

Ms. Smolnikar asserts that Royal Caribbean was negligent in selecting and retaining Chukka, as an independent contractor, to offer its Montego Bay zip line tour to its passengers.  Though cruise ship owners, such as Royal Caribbean, cannot be held vicariously liable for the negligence of an independent contractor, it is well-established that they may be liable for negligently hiring or retaining a contractor.  *See In re Central Gulf Lines, Inc.*, 176 F.Supp.2d 599, 622 (E.D.La. 2001) ("Absent any negligence on the part of the shipowner in selecting the independent contractor or in continuing to use the independent contractor, such as a ship's physician, the carrier cannot be held liable for the independent contractor's negligence.") (citing *Barbetta v. S/S Bermuda Star,* 848 F.2d 1364, 1372 (5th Cir.1988)).  *See also Guarascio v. Drake Associates Inc.* 582 F.Supp.2d 451, 457 (S.D.N.Y. 2008) (providing standard for claim alleging negligent selection of independent contractor in maritime action); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F.Supp.2d 1367, 1374 (S.D.Fla. 2002) (recognizing cause of action against shipowner for negligent selection of a physician, who is an independent contractor).  There is, however, a paucity of well-developed jurisprudence delineating the specific contours and elements of a claim for negligent selection and/ or retention of an independent contractor in a maritime action against the owner of a cruise ship.

Under Florida law, a principal may be subject to liability "for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." *See Suarez v. Gonzalez,* 820 So.2d 342, 345 (Fla. 4th DCA 2002) (quoting Restatement (Second) of Torts § 411 (1965)).  Where such a duty exists, a plaintiff bringing a claim for negligent hiring or retention of an independent contractor must prove that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *See Davies v.*

*Commercial Metals Co.,* 46 So.3d 71, 73 -74 (Fla. 5th DCA 2010) (citations omitted).[7]  Some district courts, applying general federal common law and state law in assessing claims for negligent selection and/ or retention of an independent contractor in maritime actions, have delineated a similar standard.  *See, e.g., Jurgens v. Poling Transp. Corp.*, 113 F.Supp.2d 388, 400 (E.D.N.Y. 2000) (applying general federal common law and New York state law in claim for negligent selection of an independent contractor in maritime action); *Guarascio v. Drake Associates Inc*. 582 F.Supp.2d at 457 (same).

　　In determining whether Royal Caribbean knew or reasonably should have known of Chukka's alleged incompetence (the second element noted above), the relevant inquiry is whether Royal Caribbean diligently inquired into Chukka's fitness.  *See Jackson,* 203 F.Supp.2d at 1374 (shipowner's duty to use reasonable care in selecting a competent independent contractor for the ship's medical staff is "'sufficiently fulfilled when the physician's fitness is diligently inquired into'").  *See also Warren v. Ajax Navigation Corp. of Monrovia, et al.*, 1995 WL 688421, at *5 (S.D.Fla. Feb. 3, 1995) (upholding claim against shipowner for negligent selection of a physician where the plaintiff proffered some evidence that shipowner "failed to reasonably inquire into the credentials and qualifications" of the ship's doctor).  Because Royal Caribbean has not disputed that it had a duty to properly select Chukka as an independent contractor, the relevant question is whether there is a dispute of material fact as to the elements required to prove that Royal Caribbean negligently selected and/ or retained Chukka in its operation of the Montego Bay zip line tour. Stated differently, could a reasonable jury find on this record that Ms. Smolnikar proved the requisite elements?

　　Here there is no evidence from which a reasonable jury could find that at any point in time

---

[7]  The only difference between negligent selection and negligent retention claims is "the time at which the [principle] is charged with knowledge of the [contractor's] unfitness." *See Garcia v. Duffy,* 492 So.2d 435, 438 (Fla. 2d DCA 1986) (discussing the difference between negligent hiring and selection in the employer-employee context).  In a negligent selection claim, liability is premised upon the inadequate pre-selection investigation into the contractor's background.  *See id.*  But in a negligent retention claim, liability is founded upon a showing that, during the course of the contractor's employment, the principal was aware or should have been aware of problems evidencing the unfitness of the contractor, and failed to investigate or terminate the contractor.  *See id.* at 438-49.

(before or after offering the tour) Royal Caribbean failed to "diligently inquire" into Chukka's fitness and competence to operate the zip line tour. *See Jackson*, 203 F.Supp.2d at 1374. Royal Caribbean has provided, through the undisputed testimony of its representatives, a multitude of reasons why it found Chukka to be a competent and suitable zip line tour operator before and while it was offering the Montego Bay zip line tour. Those reasons include (1) that Royal Caribbean had an incident-free relationship with Chukka dating back 4-5 years before offering the Montego Bay tour; (2) that it had never been made aware of any accidents occurring on any of Chukka's other tours; (3) the positive feedback received from Royal Caribbean passengers who participated in Chukka's other tours; (4) Chukka's reputation as a first-class tour operator; (5) that Mr. Hreniuk had assisted in designing and building the Montego Bay zip line excursion; (6) that Chukka had operated both the Montego Bay and Ocho Rios zip line tours without any problems, albeit for a limited period of time; (7) that at least two other major cruise lines had been offering the Montego Bay zip line tour for approximately a year; (8) that it had sent representatives to participate on the tour and there was no negative feedback; (9) that Chukka met the requirements of Royal Caribbean's "request for approval" process, including the insurance requirement; (10) that it had not received any comment forms or surveys from its passengers indicating, in any way, that Chukka was unfit to operate the Montego Bay tour; (11) that none of its own representatives had witnessed any accidents during the zip line tour; and (12) that it never received any accident reports from Chukka pertaining to the Montego Bay tour. These indicate that Royal Caribbean's inquiries were diligent and that its decisions were reasonable.[8]

Faced with this record, Ms. Smolnikar relies on two theories in advancing her claims for

---

[8] At oral argument, Ms. Smolnikar argued that a jury should assess the credibility of Royal Caribbean's witnesses and proffered reasons for selecting and retaining Chukka. I understand that I cannot make any credibility determinations at summary judgment, but credibility is relevant only when there is conflicting testimony by witnesses on a particular issue. Ms. Smolnikar cannot try to overcome summary judgment simply by asserting that Royal Caribbean's undisputed evidence will not be believed by a jury. *See generally Bose Corp. v. Consumers Union of United States, Inc*., 466 U.S. 485, 512 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion."). In other words, Ms. Smolnikar may not use the alleged lack of credibility of Royal Caribbean's witnesses and/ or documents as affirmative evidence absent some actual proof on her side of the ledger.

negligent selection and/ or retention: that Chukka had no experience in operating zip line excursion tours when it was selected, and that Royal Caribbean failed to inspect the Montego Bay zip line operation itself before and after it began offering it to passengers.  Both of these contentions, however, fail to create a dispute of material fact as to the salient inquiry here – whether Royal Caribbean failed to "diligently inquire" into Chukka's initial or ongoing suitability to operate a zip line excursion tour.  First, it is untrue that Chukka had never operated a zip line excursion tour before Royal Caribbean "selected" it.  Chukka's Montego Bay zip line tour had been in operation for nearly a year, and its Ocho Rios zip line tour had been in operation for seven months, when Royal Caribbean began offering the Montego Bay tour to passengers in November of 2004.  But more importantly, there is no evidence that Royal Caribbean was not cognizant of the extent of Chukka's experience in operating zip line excursion tours when it decided to sell the Montego Bay excursion to passengers.  The evidence instead shows that Royal Caribbean knew of Chukka's limited experience, but that all the factors noted earlier provided it with good reason to believe in Chukka's suitability to offer and operate the tour.

Second, though Ms. Smolnikar contends that Royal Caribbean's failure to inspect the Montego Bay tour has bearing on the diligence or reasonableness of Royal Caribbean's inquiry into Chukka's fitness to operate the tour, she has not cited any Florida cases or general federal common law principles requiring Royal Caribbean to conduct its *own* inspections of its independent contractor's excursion tour operations before selecting them and/ or while retaining them.[9]  The only support for this proposition proffered by Ms. Smolnikar is a one-sentence reference in her supplemental memorandum to § 412 of the Restatement (Second) of Torts, which she (incorrectly) interprets as imposing a duty to inspect upon common carriers.  A plain reading of § 412 illustrates that its application "is limited to possessors of land who are required to maintain the land in safe condition, . . . and persons supplying chattels to be used for their business purposes . . . ." *See Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1016 (5th Cir. 1980) (citing to § 412).  Ms. Smolnikar cannot assert that Royal Caribbean itself had a duty to inspect, or that its failure to abide by that duty

---

[9]   It should also be noted that Mr. Hreniuk's testimony establishes that Chukka conducted its own semi-annual inspections of the tour.  Though Royal Caribbean has only produced two of these inspection reports, neither of them shows that there were any safety issues with traverse #6.

purportedly creates a dispute of fact as to the reasonableness of its selection and retention of Chukka, without offering some viable authority for her asserted principle.

Based on my own review of case law regarding claims for negligent selection and/ or retention of an independent contractor, I have not found any authorities establishing or ruling that a principal has a duty to inspect the operations of a independent contractor itself in a scenario such as, or similar to, this one.  For example, as pointed out by Royal Caribbean, in cases involving negligent selection claims against travel agents there is no requirement that the travel agents conduct their own inspections of their independent contractors absent some indication of a problem.  *See, e.g., Wilson v. American Trans Air., Inc.*, 874 F.2d 386, 390 (7th Cir. 1989) (charter tour operator not required to "investigate the safety conditions" at a hotel included in its tour packages where there was nothing in the record indicating that the hotel was located in a high crime area, the tour operator had relied on the hotel's good reputation, and it had not received any notice of guest complaints regarding safety at the hotel); *Sachs v. TWA Getaways Vacations, Inc.*, 125 F.Supp.2d 1368, 1373 (S.D.Fla. 2000) (granting summary judgment on claims against a tour operator for negligent selection of a ground transportation supplier where the tour operator had investigated the contractor's reputation for safety and reliability in the travel industry and none of its other tour participants had encountered any problems with the contractor); *Sova v. Apple Vacations,* 984 F.Supp. 1136, 1142 (S.D.Ohio 1997) ("Although . . . a travel agent or tour promoter may be held liable where its own negligent failure to select a competent contractor caused the harm on which the suit is based, . . .such a claim of negligent selection will not survive where the evidence shows that the information available to the defendant revealed no safety concerns sufficient to trigger a duty to investigate or to warn.") (citations omitted); *Ramage v. Forbes Intern. Inc.* 987 F.Supp. 810, 818-819 (C.D.Cal.1997) (granting summary judgment in favor of tour operator for negligent failure to investigate a local ground-handler where the tour operator had inquired into the company's reputation, the two companies had an incident-free history in other tours, and it had never received any complaints from its tour passengers about the contractor).

Ms. Smolnikar has not submitted or referred to any evidence creating a genuine question of material fact as to whether Royal Caribbean diligently inquired into Chukka's initial and ongoing competence to operate the tour.  Nor is there any evidence of any other alleged accidents taking place

on Chukka's Montego Bay zip line tour, of any guest complaints regarding the safety of the tour, or of any other notice received by Royal Caribbean that would have prompted or perhaps required further inquiry into, or inspection of, the excursion operation.  Ms. Smolnikar has expressed doubts that Royal Caribbean turned over any and all accident reports ever submitted to it by Chukka, but this is not the time to raise such concerns.  If she believed that Royal Caribbean's discovery responses were inadequate, she should have filed a motion to compel during the discovery period.

Ms. Smolnikar also could have deposed a Chukka  representative with the most knowledge regarding the Montego Bay zip line tour, and inquired as to whether there were ever any safety issues with the tour, whether Chukka sent Royal Caribbean any accident reports at any point in time, or whether Chukka withheld accident reports from Royal Caribbean.  But she chose not to do so, and thus, cannot avoid summary judgment by asserting that Royal Caribbean has not fully disclosed all relevant documents pertaining to the safety of the Montego Bay tour.

In sum, the record shows that Royal Caribbean's selection and retention of Chukka were based upon several considerations and factors.  There is no evidence indicating that the decision-making process was deficient or that Royal Caribbean had reason to conduct its own inspections of the zip line tour.  Absent any evidence that Royal Caribbean itself was negligent in selecting and retaining Chukka, denying Royal Caribbean's motion for summary judgment would essentially allow Ms. Smolnikar to circumvent the well-established maritime rule against imposing liability on a shipowner for the negligence of an independent contractor.  *See In re Central Gulf Lines, Inc.*, 176 F.Supp.2d at 622.  Assuming for purposes of summary judgment that Chukka was negligent with regards to the design of traverse #6 of the Montego Bay zip line tour, it does not follow that a cause of action of direct negligence against Royal Caribbean must be permitted to proceed to a jury. *See,e.g., King v. Associates Commercial Corp.*, 744 S.W.2d 209, 214 (Tex.Ct.App. 1987) ("Negligence is not to be presumed – the mere fact that an independent contractor negligently caused an injury to another affords no presumption that the employer was negligent in his selection of the contractor.") (citation omitted).

Accordingly, on this record, Ms. Smolnikar has not presented sufficient evidence to allow a reasonable jury to find that Royal Caribbean negligently selected and/ or retained Chukka as an independent contractor through its promotion and sale of the Montego Bay zip line tour to its cruise

passengers.  *See King v. Crossland Sav. Bank,* 111 F.3d 251, 259 (2nd Cir. 1997) ("[Though] . . . summary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury[,] . . . [it] is nonetheless appropriate when the non-moving party has failed to set forth any facts that go to an essential element of the claim."); *Langbehn v. Public Health Trust of Miami-Dade County,* 661 F.Supp.2d 1326, 1336 - 1337 (S.D.Fla. 2009) ("Usually the question of a breach [of duty in a negligence claim] is for the trier of fact . . ., but where the facts are undisputed, or viewed in the light most favorable to the plaintiff, the question of breach can be decided by a court on . . . a motion for summary judgment . . . .") (internal citations omitted);  *Santana v. City of Hialeah*, Case No. 08-22104-Civ-Gold, 2009 WL 6635306, at *4 (S.D.Fla. Nov. 30, 2009) ("While it is true that negligence actions often involve factual questions proper for submission to the jury, there is no question that a grant of summary judgment is appropriate in negligence cases where no reasonable jury could conclude that the defendant breached a duty of care owed to the plaintiff.") (citations omitted).  Accordingly, Royal Caribbean's motion for summary judgment is GRANTED as to the negligent selection / retention claims.

### D. DUTY TO WARN

Ms. Smolnikar alleges that Royal Caribbean was negligent in failing to warn her (and the other passengers) of the allegedly known dangers or safety concerns existing at traverse #6 of Chukka's Montego Bay zip line tour.  The duty of care owed by a shipowner to its passengers is "ordinary reasonable care under the circumstances, . . .which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition."  *See O'Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).  This duty includes a duty to warn passengers of dangers the cruise line knows or reasonably should have known.  *See Carlisle*, 475 So.2d at 251 (cruise line owners have a duty to warn that "encompasses only dangers of which the carrier knows, or reasonably should have known"); *Goldbach v. NCL (Bahamas) Ltd.*, Case No. 06-21248-Civ-Huck, 2006 WL 3780705, at *2 (S.D.Fla. Dec. 20, 2006) (same).  For cruise ships, which are common carriers possessed of "a continuing obligation of care for their passengers," this duty to warn extends "beyond the port" to "place[s] where the passenger is invited to, or reasonably may be expected to visit."  *See Carlisle*, 475 So.2d at 251.  But this duty encompasses only "'those dangers which are not apparent and obvious to the passenger.'"  *See Isbell*, 462

F.Supp.2d at 1237. *See also Tradewind Transportation Co. v. Taylor*, 267 F.2d 185, 188 (9th Cir. 1959) (duty owed by transportation company, which drove tourists to points of interest, was "to warn them of any unreasonable risk of harm in or about [the site], i.e., a dangerous condition known to [the company] and unknown to the passengers"); *Rawlins v. Clipper Cruise Line*, 1996 WL 933862, at *3 (E.D.Mo. 1996) (adopting standard set forth in *Tradewind Transportation*).

Royal Caribbean argues that it did not have a duty to warn Ms. Smolnikar of the alleged dangers existing at Chukka's Montego Bay zip line tour because the risks were "apparent and obvious." *See Isbell*, 462 F.Supp.2d at 1237. There is a fundamental distinction, however, between the cases cited by Royal Caribbean – where courts found that dangers encountered in offshore excursions during a cruise were "apparent and obvious" – and what Ms. Smolnikar is complaining about. *See, e.g., Isbell*, 462 F.Supp.2d at 1238 (presence of snakes in a river was an apparent and obvious danger for an excursion involving cave tubing in a rain forest river); *John Morrell & Co. v. Royal Caribbean Cruises, Ltd.,* 534 F.Supp.2d 1345, 1352 (S.D.Fla. 2008) (cruise ship owner did not owe passenger duty to warn about "the obvious danger that dune buggies utilized in [a] shore excursion might be involved in collisions with other vehicles driven carelessly by others"); *Young v. Carnival Corp.*, Case No. 09-21949-Civ-King, 2011 WL 465366, at * (S.D.Fla. Feb. 4, 2011) (uneven, rugged terrain and risk of tripping was an open and obvious risk posed by a hike through a glacier). Here, it is simply unreasonable to posit that the danger of slamming into a tree at a high speed without adequate protection (as alleged by Ms. Smolnikar) is a risk inherent to participating in a zip line tour. The type of accident that Ms. Smolnikar alleges occurred at traverse #6 is not a foreseeable or inherent risk that a participant of a zip line tour clearly assumes. Things would be different, of course, had Ms. Smolnikar alleged that she had a severe fear of heights (capable of causing emotional and physical distress), and that Royal Caribbean failed to warn her that the zip line tour would involve being suspended in air at high altitudes. But that is not the case here. Thus, based on the nature of Ms. Smolnikmar's accident, I cannot conclude as a matter of law that the dangers Ms. Smolnikar alleges existed as to traverse #6 of the Montego Bay zip line excursion were "apparent and obvious."

Nonetheless, as with the claims for negligent selection and/ or retention, Ms. Smolnikar has not submitted or referenced any evidence in this record creating a dispute of fact as to whether Royal

19

Caribbean knew or should have known that there was any alleged safety issue at traverse #6 of Chukka's Montego Bay zip line tour.   As previously noted, Royal Caribbean had positive information about Chukka, and there is no evidence that Royal Caribbean received any form of notice regarding the existence of an alleged danger, as there were no accident reports from Chukka, or passenger comment forms or reviews, alerting Royal Caribbean as to a potential safety concern at traverse #6 of the tour.[10]   And, as discussed above, Ms. Smolnikar has not cited to any authority – nor is there any that I have found – establishing that Royal Caribbean was required to inspect the Montego Bay operation itself absent any indication of a problem.   As a result, summary judgment is GRANTED on Ms. Smolnikar's negligence claim for failure to warn.   *See Rawlins*, 1996 WL 933862, at *3 (granting summary judgment against passenger on failure to warn claim against cruise line because cruise line had no knowledge of weather conditions that would exist for whale-watching excursion); *DeRoche v. Commodore Cruise Lines, Ltd.*, 31 Cal App. 4th 802, 46 Cal. Rptr. 2d 468, 472-73 (1st Dist. 1994) (under federal maritime law, cruise line had no duty to warn passengers of substandard medical care in Cozumel, Mexico, absent "facts from which it might be concluded that [the cruise line] had knowledge of any unreasonable risk posed by the state of Cozumel's medical care facilities").   *Cf. Rookard v. Mexicoach*, 680 F.2d 1257, 1261-62 (9th Cir. 1982) (under California law, issues of fact precluded summary judgment on duty to warn claim where travel agent knew that it was hazardous to ride on Mexican buses but "made no efforts to investigate the safety record" of those buses).

### E.  APPARENT AGENCY[11]

Federal maritime law recognizes the assertion of vicarious liability through the doctrine of

---

[10]  Additionally, though it is uncertain whether Royal Caribbean was in possession of the two inspection reports previously mentioned, both reports do not make any reference to safety concerns or dangers found at traverse #6.

[11]  Royal Caribbean did not oppose Ms. Smolnikar's assertion of apparent agency, even though it was not specifically pled.   In fact, it was Royal Caribbean that raised the issue of apparent agency in its motion for summary judgment.   Thus, I do not need to address whether a party must specifically plead apparent agency in order to assert a negligence claim on that basis.   Additionally, I note that, in her response memorandum, Ms. Smolnikar stated that she would not pursue her allegation of a joint venture between Royal Caribbean and Chukka.

apparent agency.  *See Archer v. Trans/American Services, Ltd.,* 834 F.2d 1570, 1573 (11th Cir. 1988).
Apparent agency  is established when "(1) the alleged principal makes some sort of manifestation
causing a third party to believe that the alleged agent had authority to act for the benefit of the
principal, (2) that such belief was reasonable and (3) that the claimant reasonably acted on such
belief to his detriment."  *See Warren*, 1995 WL 688421, at *2.  In applying this principle, "it is the
manifestation by the cruise ship to the third party that is controlling."  *See Doonan v. Carnival Corp*.,
404 F.Supp.2d 1367, 1371-72 (S.D.Fla. 2005).  *See also Warren,* 1995 WL 688421 at *2 ("Apparent
authority only applies when it is the principal, rather than the agent, who represents or 'holds out'
to third parties that the agency exists.").

Here, Ms. Smolnikar's assertions of apparent agency are based on her deposition testimony
that (1) a Royal Caribbean representative at the excursion desk in the cruise ship indicated that Royal
Caribbean was "in charge of" Chukka's Montego Bay zip line tour, and (2) that a Chukka employee
told her during the excursion that the land was owned, and the tour run, by Royal Caribbean.  But
both of these statements – hearsay from unidentified individuals – fail to create a genuine question
of material fact as to whether Ms. Smolnikar can establish an apparent agency relationship between
Royal Caribbean and Chukka.  First, the alleged statement from the unidentified Chukka employee
does not constitute a viable basis for establishing an apparent agency relationship because it was not
a manifestation made by Royal Caribbean.  *See Doonan*, 404 F.Supp.2d at 1371-72.  Second, Ms.
Smolnikar's purported belief that Chukka was an agent of Royal Caribbean was not reasonable in
light of the *four* separate disclaimers that she was provided which expressly represented that the
offshore excursion tour operators (such as Chukka) were independent contractors and were not
agents or representatives of Royal Caribbean.  *See Hajtman,* 526 F.Supp.2d at 1329 (finding that a
similar disclaimer on a passenger cruise ticket rendered a plaintiff's belief that the ship's medical
staff members were agents of the cruise ship owner as unreasonable). *See also Peterson v. Celebrity
Cruises, Inc*., Case No. 10-23071-Civ-Ungaro, 2010 WL 4933549, at *3 (S.D.Fla. Nov. 30, 2010)
(concluding that alleged manifestations by the cruise ship owner could not form the basis of a
reasonable belief of an agency relationship with the ship's medical staff because of the "explicit
agency disclaimer in th cruise ticket contract"); *Wajnstat v. Oceania Cruises, Inc.*, Case No. 09-
21850-Civ-Cooke, 2011 WL 465340, at *4 (S.D.Fla. Feb. 4, 2011) (same).

Accordingly, there is no dispute of material fact as to whether there was an apparent agency relationship between Royal Caribbean and Chukka.  Royal Caribbean's motion for summary judgment on the issue of apparent agency is therefore GRANTED.

## IV. CONCLUSION

In sum, Royal Caribbean's motion for summary judgment based on the application of the disclaimers is DENIED, and its motion for summary judgment regarding Ms. Smolnikar's claims for (1) negligent selection and/ or retention, (2) negligent failure to warn, and (3) vicarious liability for Chukka's negligence through apparent agency is GRANTED.  A final judgment will be issued separately.

DONE and ORDERED in chambers in Miami, Florida, this 10th day of May, 2011.


_Adalberto Jordan_
Adalberto Jordan
United States District Judge

Copy to:      All counsel of record